Richard Gale v. Commissioner.
Gale v. Commissioner
Docket No. 5113.
United States Tax Court
1945 Tax Ct. Memo LEXIS 162; 4 T.C.M. (CCH) 620; T.C.M. (RIA) 45205; June 13, 1945
*162 William F. Evans, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income tax as follows: 25%
50%
Year
Deficiency
Penalty
Penalty
1938
$54.79
$13.70
$27.40
1939
59.74
14.94
29.87
1940
22.75
5.69
11.38
[The Facts] The petitioner resides at 3235 Grand Concourse, Bronx, N. Y. He filed no income tax returns for the years 1938, 1939, and 1940. During the taxable years petitioner was superintendent of a number of buildings owned by different real estate corporations, the capital stock of which was either held as trustee or owned by W. J. Ryan, H. W. Ryan, and their sister, Margaret W. Smith; also of a number of parcels of real estate owned by one or more of the same individuals. The Ryan brothers were law partners with an office at 203 Fordham Road. Most of these properties were formerly owned by the father of the above named individuals, Joseph P. Ryan, who died January 1, 1936. The two major corporations are Conford Realty Co., Inc., which owns property at the northeast corner of Grand Concourse and Fordham Road, on which is located a motion *163 picture theatre, and a two-story building housing 10 stores on the ground floor with 12 offices above, and Fordelm Realty Co., Inc., which owns property at Fordham Road and Elm Place, on which is located a one-story building housing 9 or 10 stores. The stock of these corporations was held by the above named individuals under a deed of trust dated January 1, 1930, the beneficiaries of which are the three named individuals for life with remainders over to the grandchildren of Joseph P. Ryan. Prior to 1936 the petitioner had been employed as a helper to a plumber by the name of William W. Webb, who superintended the properties. The petitioner was married in 1927 or 1928. He was permitted to occupy a two-room apartment in the building owned by the Conford Realty Co., which was the only apartment in the building. The rental value of this apartment was $30 per month. Shortly after the death of Joseph P. Ryan, the then superintendent of the properties, Webb, gave up his employment as superintendent of the buildings and the petitioner was employed in his place. On or about July 30, 1940, the petitioner was discharged. He applied to the Social Security Board for unemployment benefits. *164 He was required to state the amount of the income which he had received over a period of years. The statement which he filed did not show the receipt of as large an amount of income as was shown to have been paid to him by the Social Security records. These showed that he had received a much larger salary from the Conford Realty Co. than he had reported, and also a salary from Fordelm Realty Co. When confronted with this fact the petitioner denied that he had received the compensation shown as having been paid to him according to the records of the Social Security Board received from those companies. The Social Security Board then referred the matter to the Commissioner of Internal Revenue. His agents then contacted the petitioner who charged that W. J. Ryan, who was the president of the real estate corporations, had falsified the records. The Commissioner's agents then made an intensive audit of the accounts of the real estate corporations and of the personal returns filed by the Ryans. Since the books of account of the real estate corporations tallied with the reports which had been made to the Social Security Board by them, the Commissioner's agents reached the conclusion that *165 the petitioner had received the amount of compensation as shown by the books of account of the real estate corporation. They then concluded that the petitioner had wilfully refused to file proper income tax returns for the years 1938, 1939, and 1940 and determined deficiencies in income tax and penalties involved in this proceeding. In his deficiency notice the respondent determined as follows: EXPLANATION OF ADJUSTMENTS TAXABLE YEAR ENDED DECEMBER 31, 1938 The following salaries received by you during the taxable year 1938, but not reported, are held to be taxable income: Daford Realty Corporation
$ 300.25
Mainrose Realty Corporation
75.00
Bridgehead Realty Corporation
175.00
Fordelm Realty Company, Inc.
1,730.00
Conford Realty Company, Inc.
1,680.00
Conford Realty Company, Inc. -
(value of living quarters at
$30.00 per month)
360.00
National Personal Finance Com-
pany
104.00
Dr. Mario Franzone
150.00
Electrolysis Associates, Inc.
170.00
Total
$4,744.25
EXPLANATION OF ADJUSTMENTS TAXABLE YEAR ENDED DECEMBER 31, 1939 The following salaries received by you during the taxable year 1939, but not reported, are held to be taxable income: *166 Daford Realty Corporation
$ 300.00
Mainrose Realty Corporation
90.00
Bridgehead Realty Corporation
240.00
Fordelm Realty Company, Inc.
1,880.00
Conford Realty Company, Inc.
1,997.00
Conford Realty Company, Inc.
(value of living quarters - 3
months at $30.00)
90.00
National Personal Finance Com-
pany
104.00
Dr. Mario Franzone
150.95
Electrolysis Associates, Inc.
204.00
Armstrong Bros.
48.00
Total
$5,103.95
EXPLANATION OF ADJUSTMENTS TAXABLE YEAR ENDED DECEMBER 31, 1940 The following salaries received by you during the taxable year 1940, but not reported, are held to be taxable income: Daford Realty Corporation
$ 200.00
Mainrose Realty Corporation
37.50
Bridgehead Realty Corporation
104.00
Fordelm Realty Company, Inc.
1,410.00
Conford Realty Company, Inc.
1,375.00
National Personal Finance Com-
pany
70.00
Dr. Mario Franzone
99.00
Electrolysis Associates, Inc.
59.00
Armstrong Brothers
28.00
Cosmopolitan Operating Com-
pany, Inc.
303.13
Total
$3,685.63
It is the petitioner's contention that he never received any income from the Fordelm Realty Co. for the taxable years here in question except a $50 bonus *167 given him in December of 1938, and December of 1939, and that the only income which he ever received from the Conford Realty Co. was $45 per month plus $30 per month for his apartment and plus a $50 bonus for 1939. He does concede, however, that W. J. Ryan was generous to him in many ways. He stated that he gave him about $200 during each of the years 1938 and 1939 to enable him to send his wife and child to the country for a period of about six weeks each year, gave him $200 with which to open a checking account at a bank, $200 to purchase a secondhand Ford automobile, and $600 to purchase a secondhand Cadillac car; also $50 per month during part of the period to enable him to pay garage rent and the expenses of an automobile which he needed to drive to the different properties which he superintended, and also paid his wife's doctor bills at the birth of one of his children.
The evidence submitted by the petitioner is directed particularly to the amounts of compensation claimed to have been paid to him by Fordelm Realty Co. and Conford Realty Co. The evidence plainly does not overcome the presumption of correctness which attaches to the respondent's determination with respect to *168 income received by the petitioner from other sources than from the two named companies. To rebut the claims of the petitioner the respondent subpoenaed the books of the Fordelm Realty Co. and of the Conford Realty Co. They show the payments to the petitioner of approximately $140 per month by each corporation. The respondent also submitted in evidence cancelled checks for the alleged payment of the compensation. Practically all of these checks were made payable to cash. Two checks were drawn each month. All of the checks of the Fordelm Realty Co. were made payable to cash except those for the payments of the Christmas bonus which were made payable to the petitioner and which were endorsed by him. Likewise, nearly all of the checks drawn by the Conford Realty Co. and claimed to be salary checks were made payable to cash. When W. J. Ryan was requested to explain why these checks were made payable to cash rather than to Richard Gale he testified that the petitioner requested that he be paid in cash rather than by check and that it was the practice of Ryan to have his secretary cash each salary check and pay the money over to him and that he in turn paid it to the petitioner. He further *169 testified that in many cases the petitioner did not want to receive the cash when it was due and that it was the custom of W. J. Ryan to hold the cash until the petitioner had use for it. He stated that the petitioner told him that he did not need it at the time and that Ryan should hold it until he had need for it; that at times he was holding for the petitioner as much as $2,000 of his salary; but that eventually all of it was paid over to the petitioner. The testimony of Ryan is diametrically opposed to that of the petitioner. The evidence is clear that in many cases the petitioner made disbursements on behalf of the real estate corporations or of Ryan for their benefit and that Ryan reimbursed petitioner for such disbursements. We cannot tell from the record just what the truth is. The petitioner testified that the Fordelm Realty Company's property was only about one and one-half blocks from the Conford Realty Company's property. He testified: Q. With reference to Fordelm Realty, will you kindly tell what work you did? A. In the Fordelm Realty I would only have to go down there in the winter months to watch the oil and put water in the boiler every second day. I would get *170 down there every second day to check that. That was all the work. Maybe once in a while I would have to put in a washer for one of the stores or something like that. It was only stores. They were all chain stores. They had their own service. Q. What would you say the average time was that you spent for Fordelm Realty on a weekly basis? A. I would say no more than twenty, twenty-five minutes for the whole week. It seems to us unreasonable that the petitioner should have been paid $140 a month for that trivial service. We believe the petitioner was telling the truth when he said he never received a penny for the work done for the Fordelm Realty Co. except the $50 bonus which he received in December of 1938, and December of 1939. It seems to us hardly plausible that the petitioner should have requested that compensation from the Fordelm Realty Co. and from the Conford Realty Co. be paid in cash rather than by check in view of the fact that during the years 1939 and 1940 the petitioner had a checking account at a bank, which fact was well known to Ryan, and the further fact that Ryan drew checks on his own account payable to the petitioner, which checks the petitioner collected. *171 It furthermore seems doubtful to us that the petitioner should have told Ryan to retain a part of his salary from the two corporations and pay it to him as he needed the money. Ryan admits that the petitioner's compensation shown by the books of account of the Fordelm Realty Co. and Conford Realty Co. was, in the first instance, paid to him. We cannot determine the exact amount of the compensation that was received by the petitioner. The petitioner testified that some amounts of money were paid to him by Ryan which he considered as gifts, such, for instance, as money to pay his wife's expenses in the country for a period of about six weeks in 1938 and 1939, and also his wife's hospital expenses at the time of the birth of a second child. Ryan testified that he made no gifts to the petitioner for any such purpose. These advances were apparently out of the amounts that were charged to the petitioner as compensation upon the books of the two-named Realty Companies. From a consideration of all of the evidence we reach the conclusion that the evidence sustains the petitioner's contention that he received no income from the Fordelm Realty Co., except for the Christmas bonuses for 1938 *172 and 1939. We are of the opinion, however, that the evidence does not overcome the presumption of the correctness of the respondent's determination that the petitioner received amounts of money paid to him by Ryan equal to the amounts claimed to have been paid as compensation by the Conford Realty Co. Since the petitioner filed no income tax returns for 1938, 1939, and 1940 the 25 percent delinquency penalty has been incurred for any deficiency shown to be due. It is also clear, we think, that the petitioner received taxable income for the three tax years in question which required him to file income tax returns and that his failure to do so was with intent to avoid income tax on a part of his income. Ryan testified that the petitioner had advised him that all required income tax returns had been filed by him. We, therefore, sustain the respondent's contention with respect to the imposition of the 50 percent penalty upon any tax liabilities shown to be due for the tax years in question. Decision will be entered under Rule 50.